Argued and submitted February 14, 2012, reversed and remanded April 3, 2013

RICHARD ITHIEL LAING,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

Psychiatric Security Review Board
021804; A145372

300 P3d 1247

Susan D. Isaacs argued the cause and filed the briefs for petitioner.

Carolyn Alexander, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner seeks judicial review of a 2010 Psychiatric Security Review Board (PSRB) order denying his request for conditional release. Petitioner argues that PSRB erred in denying his conditional release in 2010, because it previously agreed, in a 2008 order, to conditionally release him while he was on post-prison supervision under conditions set by the Board of Parole and Post-Prison Supervision (BOPPS).[1] PSRB responds that it did not violate the 2008 agreement, because, as part of that agreement, PSRB reserved the right to review and reject BOPPS's plan under the statutes and regulations governing conditional release. We agree with petitioner and conclude that PSRB's view of the 2008 agreement is not supported by substantial evidence. Accordingly, we reverse and remand.

The following facts are undisputed. In 2002, petitioner was found guilty except for insanity on two counts of second-degree assault, placed under PSRB jurisdiction for a period not to exceed 10 years, and committed to the Oregon State Hospital. ORS 161.295; ORS 163.175. In 2005, petitioner left the state hospital without authorization and lived on the streets of Portland for nearly two years, until he was arrested and returned to the state hospital in 2007. Petitioner was charged with second-degree escape, ORS 162.155. Before petitioner's 2008 PSRB hearing, petitioner and the state agreed to propose to PSRB that petitioner would stipulate to PSRB's continuing jurisdiction, dismiss all of petitioner's pending litigation against the state arising from his PSRB commitment case,[2] plead guilty to second-degree escape, and serve a 32-month term of incarceration on that conviction at the Oregon State Penitentiary. The state, in exchange, would recommend that PSRB conditionally release petitioner from the Oregon State Hospital to the Department of Corrections (DOC) for his prison term

---

[1] Petitioner argues, alternatively, that PSRB lacked substantial evidence to find that petitioner ever suffered from a mental disease or defect subject to PSRB's jurisdiction or that petitioner is a danger to others because of his mental condition. We reject those arguments without discussion.

[2] Petitioner had several cases pending against the state, including at least two mandamus actions in Marion County Circuit Court, at least two appeals in habeas corpus cases in the Court of Appeals, and a Court of Appeals case regarding PSRB's prior ruling.

and, after his prison term, petitioner would be conditionally released subject to the conditions set by BOPPS, so long as petitioner's circumstances or conduct did not change substantially from the time of the 2008 order. The agreement between the parties—petitioner and the state—was conditional until approved by PSRB. The parties presented that agreement to PSRB at a hearing on April 23, 2008.

During that hearing, PSRB expressed concerns about adopting the proposed agreement, in light of PSRB's statutory considerations:

"[PSRB Board Member]: [I]n terms of our responsibility to do what we can to ensure community safety first and foremost * * *, I wonder [if] we don't have an obligation to consider the appropriateness for conditional release or discharge in those last months of jurisdiction. We are saying in advance that that is going to provide for community[—]

"[PSRB Chair]: That sounds like a matter for deliberation.

"[PSRB Board Member]: Yes, that's my[—]

"[Assistant Attorney General (AAG)]: May I add a comment with respect to that * * * issue, and that's during the two years that he's on post-prison supervision you'll discover whether or not it's working um, because he'll either violate the terms of post-prison supervision and your conditional release or he won't.

"[Petitioner's Attorney]: * * * I think petitioner has proved that under no supervision, he is not a danger to others or the public. He was under no one's control for approximately two years while he was in Multnomah County and * * * there is no evidence, because there was no crime, except potentially the escape charge, he was under no treatment. * * *

"[PSRB Chair]: Without arguing that point, because I see no reason to debate that, what is your understanding and your discussions as to the authority of the Board during this period of conditional release in the event that there was a * * * return of * * * active mental illness and behavior that was unacceptable. Would that be handled by the Department of Corrections or would there be a revocation of the[—]

"[AAG]: If it occurred during the period that he was on post-prison supervision or while he was incarcerated, he'd have to re-visit the issue.

"[PSRB Chair]: Re-visit the issue?

"[AAG]: Meaning if he violated[—]

"[PSRB Chair]: The agreement that you made.

"[AAG]: Yeah. If he violated the terms of his post-prison supervision or committed a new crime while he was in custody[—]

"[PSRB Chair]: Then he would in effect be violating the conditions[—]

"[AAG]: Exactly.

"[PSRB Chair]: Set by the Board. Alright.

"[PSRB Board Member]: I have an additional question, Mr. Chair, if I may?

"[PSRB Chair]: Please inquire.

"[PSRB Board Member]: The parole and post-release supervision *** people who staff those programs *** have caseloads of varying sizes and *** provide a highly variable degree of actual supervision from basically none unless there is a problem to *** fairly frequent and close supervision. Is there any provision for scaling that in a way *** that's appropriate to [petitioner]?

"[Petitioner's Attorney]: [T]he only thing I could tell you is we've made no agreement and I don't know that we could make an agreement for the post-prison supervision *** approximately two years from now, for that *** you know they would obviously say they will give the service that is appropriate and I would say that that's true. ***

"[AAG]: Well, to that end, the Parole Board will set those conditions and to the extent that this Board may or may not have any concerns, you can communicate those to the Parole Board.

"[PSRB Board Member]: I think I'm ready to deliberate.

"[PSRB Chair]: Any further discussion? Thank you, we'll go off the record for a few moments, we'll call you back."

At that point, PSRB recessed for deliberations.

When PSRB came back on the record, the chair stated:

"The Board has deliberated, [and] essentially we are agreeable to the * * * discussion that you had earlier and the stipulated agreement that you proposed. [W]e * * * accept your stipulation to the appropriateness of the jurisdiction of the Board. That is, that you have a mental disorder which, when active, presents a substantial danger to others and are therefore appropriately under the Board's jurisdiction. [Furthermore], we find you appropriate for conditional release to the Department of Corrections for a sentence of 30 months once sentenced based on a plan * * * that you have worked out and imposed by the Marion County Judge since there's been no pleading at this time, that would be a condition. *And after the completion of your prison sentence, as agreed to, in January 2011, we would ask that you return to the Board for approval of the Post-Prison Supervision plan for a period of two years.* [F]inally, we would again ask that you come back for a hearing * * * for us to consider full discharge in January 2013 by action of this Board based on the State's recommendation at that time and successful completion of the sentence and Post-Prison Supervision as you have mutually agreed to. And all of this of course, is contingent upon your offer to drop all pending litigation against the Board and the State of Oregon relating to your disposition here and * * * hope that is * * * sufficiently clear with respect to the agreement that the, the two of you have reached."

(Emphasis added.)

The board then asked if the parties had any comments, and this exchange followed:

"[Petitioner's Attorney]: [M]y only real comment is * * * I think it's clear, I'm going to want to see the written decision out of the Board so it will be clear. *[I]f it's the way we've agreed, then we're fine.* [O]ne thing I need to know is approximately, or if we can get a little bit more than approximately, when * * * I might see a written decision. [W]e would hope * * * that once * * * I see it and approve, actually the language, * * * then that's when we'll go in and plead * * * in Marion County.

"[PSRB Board Member]: Once you have an agreeable order from the * * * Board[—]

"[Petitioner's Attorney]:   Correct."

(Emphasis added.)

On May 6, 2008, the day before PSRB issued its written order, petitioner pleaded guilty to the second-degree escape charge in the Marion County Circuit Court. In explanation of petitioner's willingness to plead guilty, petitioner's attorney told the trial court that PSRB had approved the parties' proposed agreement at the April 23, 2008, hearing:

> "[PSRB] has agreed that they will conditionally release [petitioner] to the prison sentence that Your Honor is about to sentence him to; that they will then conditionally release him after his prison sentence is completed to the post-prison supervision terms that [BOPPS] set for him. They can—[PSRB] can ask [BOPPS] to add conditions, but if [BOPPS] does not add the conditions that [PSRB] wants, they cannot revoke [petitioner] because of that. In other words, they may ask them to force [petitioner] to live in a group home. If [BOPPS] does not put that as a condition, they can't revoke him just because of that. They may still be able to revoke him based on his behavior, in other words if he commits a new crime, but otherwise they have agreed to have concurrent conditional release from his commitment to the State Hospital and post-prison supervision."

In its written order on May 7, 2008, PSRB stated that it had "accept[ed] as findings of fact the stipulations of the parties as set forth by the parties at the outset of the hearing." Those stipulations included the parties' agreement that the Attorney General's representative would ask PSRB to approve petitioner's conditional release after he served his prison term, and that petitioner would serve that post-prison supervision term under conditions set by BOPPS. Furthermore, the 2008 order specifically recited that, pursuant to the parties' agreement,

> "[PSRB] could ask [BOPPS] to consider conditions [PSRB] might think were appropriate in addition to the standard conditions that [BOPPS] would require but that [PSRB] will accept the conditions set by [BOPPS] unless [petitioner's] circumstances or behavior had substantially changed from the date of this order."

The order recited that the proposed agreement—including that PSRB "will accept the conditions set by [BOPPS]"— "would only be effective if [PSRB] were to agree to it in its entirety."

The May 7, 2008, order also stated that petitioner could be adequately controlled and treated by DOC and that petitioner "may be conditionally released once [PSRB] has received a copy of a judgment order imposing the agreed upon sentence in his current [e]scape charge as well as documentation that [petitioner] has moved to dismiss all his pending litigation against the State of Oregon and [PSRB]." PSRB received the necessary documentation and subsequently issued a conditional release order on May 21, 2008. Petitioner then was conditionally released to DOC jurisdiction and served his time at the Oregon State Penitentiary without incident.

When petitioner completed his prison sentence in 2010, PSRB revoked his conditional release and held a hearing to consider the adequacy of his post-prison supervision plan.[3] At the hearing, petitioner's counsel stated:

---

[3] BOPPS's Order of Supervision Conditions provided, in part:

"[Petitioner] is hereby released. Parole or Post-Prison Supervision shall begin on release from physical custody. The minimum active supervision period shall be 12 months, or to the sentence expiration date. Extension of the active supervision period is contingent on a recommendation from the supervising officer and Board approval. Supervision conditions may be modified as necessary. If you violate any of these conditions you may be incarcerated or sanctioned in the community. You are subject to all General Conditions and to the following Special Conditions:

"1. Offender shall be evaluated by a mental health evaluator and follow all treatment recommendations.

"2. Offender shall continue to take any psychiatric or psychotropic medication that was prescribed prior to or at the time of release from custody until otherwise directed by a physician. At the direction of the parole officer, the offender shall undergo a psychiatric evaluation and take any medications recommended. The offender shall comply with a medication monitoring program at the request of the parole officer.

"9. Offender shall not possess or use intoxicating beverages.

"10. Other: Special conditions may be imposed that are not listed above when the Board of Parole and Post-Prison Supervision determines that such conditions are necessary. SUBSTANCE ABUSE PACKAGE: a. Do not enter into establishments where alcohol is the primary source of revenue; b. Do not go to places where drugs are known to be used, kept, manufactured, or sold; c. Attend substance abuse support or self-help group as approved and directed by PO; d. Do not possess drug paraphernalia; e. No association with known

"We have an agreement. *** The agreement included coming back here before you, so you could finalize the conditions that you had already agreed to, unless [petitioner] had done something broadly wrong. *** If you're telling me you're not, you're, there's a question about the agreement, there is no question about the agreement, it's set forth in the, all of the transcripts."

The AAG agreed with petitioner's understanding of the agreement:

"In looking at Exhibit 78, I can't disagree with [petitioner's counsel] that it appears there was [an] agreement struck between a past Board, in April of 2008 and [petitioner]. And so it seems to me that um, what we should be about at this hearing, is determining if [petitioner], this Board needs to satisfy itself that [petitioner] is basically in the same position now, that he was in 2008 with respect to his mental health and if he is, then I don't have, I have a hard time disagreeing with [petitioner's counsel] that ah, [petitioner] should not be conditionally release[d]. If there's not something that would prevent him from being conditionally released, based upon the doctor's evaluation of him *** within a reasonable time period ***, then I think the agreement *** looks like he needs to be released, conditionally released."

Nonetheless, PSRB determined that it had never agreed to accept the conditions set by BOPPS and that it had reserved the right to insist upon additional conditions of release. In its 2010 order, PSRB "acknowledged the agreement that was reached by the parties at the 2008 hearing and took note that [petitioner] had not had any incidents nor revocations while imprisoned." However, PSRB denied petitioner's conditional release on the ground that the conditions in BOPPS's order were legally insufficient. PSRB found that it had "indicated at the time of the 2008 hearing that [PSRB] would ask that [petitioner] return to [PSRB] for approval of the post-prison supervision plan upon the completion of his prison sentence" and that "[it] expected a plan to be presented that conformed to [PSRB's] standards." Having considered BOPPS's order, PSRB determined, "based upon the lack of information provided to [PSRB] as required by

drug users outside of a treatment setting without the prior written permission of PO."

its statutes and administrative rules[,] particularly ORS 161.336 and OAR 859-070-0015," that "the supervision and treatment necessary are not available in the community. Therefore, it would not be in the best interest of justice and the protection of society to release [petitioner] at this time."

On judicial review, petitioner argues that, as part of the 2008 agreement, PSRB agreed to accept the conditions set by BOPPS, and PSRB erred in concluding that it had reserved the right to reject the release conditions set by BOPPS. In response, PSRB concedes that, had it actually agreed to accept the conditions for release set forth by BOPPS, such an agreement would be binding.[4] PSRB argues, however, that nowhere in the record, either in written form or oral, did it agree to "rubber stamp" a parole plan with just general supervision conditions. Rather, PSRB contends that the 2008 hearing transcript—specifically, the board chair's statement that, "after the completion of your prison sentence, as agreed to, in January 2011, we would ask that you return to [PSRB] for approval of the Post-Prison Supervision plan for a period of two years"—makes clear that PSRB inserted its own additional condition that petitioner return to PSRB for consideration and approval of the post-prison supervision plan proposed by BOPPS. PSRB argues that its chair's statement was an implicit rejection of the parties' term that PSRB would defer to conditions set by BOPPS.[5]

Given the posture of this case, including the parties' respective arguments, the question before us is whether there is any support in the record for PSRB's determination that it had reserved the right to review and reject the adequacy

---

[4] PSRB does not argue that the 2010 order was based on a determination that such an agreement exceeds PSRB's statutory authority or that PSRB otherwise cannot be held to the terms of such an agreement. *Cf. Arken v. City of Portland*, 351 Or 113, 138-39, 263 P3d 975 (2011) (explaining that "promissory estoppel against a governmental entity * * * can be applied only in limited circumstances").

[5] PSRB also contends that petitioner either failed to preserve the argument that the agreement did not require PSRB's approval of his post-prison supervision conditions, or that petitioner invited error by failing to alert the board to inconsistencies in the substance of the agreement. We disagree. Petitioner reasonably believed that the board adopted the agreement in its entirety. Therefore, petitioner had no claim of error to preserve or appeal in 2008 and properly preserved the subject of this appeal at the 2010 hearing when he argued that PSRB breached the 2008 agreement.

of the conditions of release set forth by BOPPS. *See* ORS 183.482(8); *former* ORS 161.385(9)(c) (2009), *renumbered as* ORS 161.348(3) (2011). For the reasons that follow, we agree with petitioner on that issue: PSRB unambiguously agreed to "accept the conditions set by [BOPPS] unless [petitioner's] circumstances or behavior had substantially changed from the date of this order."

As set forth above, the terms of petitioner's proposed settlement agreement with the state were presented clearly to PSRB, including the term in dispute here: that, after his prison term, petitioner would be conditionally released subject to the conditions *set by BOPPS*. That is, as the agreement was presented, there was no dispute that BOPPS, not PSRB, would decide the release conditions and that PSRB would simply provide input to BOPPS. The state's attorney made that explicit to PSRB during the hearing, stating that "the Parole Board will set those conditions and to the extent that this Board may or may not have any concerns, you can communicate those to the Parole Board."

PSRB nonetheless maintains that it approved a different agreement from the one the parties proposed. That is, PSRB maintains that, at the 2008 hearing, it approved an agreement that contained a materially different term than the parties had proposed—specifically, an agreement that allowed PSRB to review the sufficiency of the release conditions imposed by BOPPS. That term was added, according to PSRB, when, at the 2008 hearing, the PSRB chair stated, "[W]e would ask that you return to the Board for approval of the Post-Prison Supervision plan for a period of two years."

Read in isolation, PSRB's request that petitioner return to PSRB "for approval of the Post-Prison Supervision plan" could imply that PSRB retained its ability to approve or reject the conditions of post-prison supervision. In context, however, it is apparent that PSRB's "approval" of the plan was not so broad. Indeed, *no one*—including PSRB—understood it that way at the time of the hearing. The state and petitioner left the hearing under the impression that their agreement had been approved as proposed, and they proceeded on that assumption. On May 6, 2008, petitioner, pursuant to the terms of the agreement, pleaded guilty in

the trial court; at that time, petitioner's counsel represented to the trial court—without any objection from the state—that, under their agreement,

> "[PSRB] can ask [BOPPS] to add conditions, but if [BOPPS] does not add the conditions that PSRB wants, they cannot revoke [petitioner] because of that. In other words, they may ask them to force [petitioner] to live in a group home. If [BOPPS] does not put that as a condition, they can't revoke him just because of that."

Most importantly, though, PSRB's May 2008 final order reflects the fact that PSRB itself understood that it had approved the agreement *proposed by the parties*, and not some modified version of that agreement. The order states that PSRB "accept[ed] as findings of fact the stipulations of the parties as set forth by the parties at the outset of the hearing." Those stipulations—"at the outset of the hearing"—were the stipulations between the state and petitioner, which specifically included the parties' agreement that the state's attorney would ask PSRB to approve petitioner's conditional release after he served his prison term, and that petitioner would serve that conditional release as a post-prison supervision term under conditions *set by BOPPS*. Furthermore, the 2008 order explicitly recited that, pursuant to the parties' agreement,

> "[PSRB] could ask [BOPPS] to consider conditions [PSRB] might think were appropriate in addition to the standard conditions that [BOPPS] would require but that [PSRB] *will accept the conditions set by [BOPPS] unless [petitioner's] circumstances or behavior had substantially changed from the date of this order.*"

(Emphasis added.) Finally, and most importantly, the order recited that the proposed agreement—including that PSRB "will accept the conditions set by [BOPPS]"—"would only be effective if PSRB were to agree to it *in its entirety*." (Emphasis added.) Nowhere in the order is there any suggestion that PSRB agreed to something other than the entirety of the parties' proposed agreement.

Based on the record before us, there is no factual support for PSRB's finding that, at the 2008 hearing, it had approved an agreement whereby PSRB reserved the right

to reject the supervision conditions set by BOPPS. Rather, PSRB explicitly agreed to "accept the conditions set by [BOPPS] unless [petitioner's] circumstances or behavior had substantially changed from the date of this order." Thus, PSRB's order denying petitioner's request for conditional release is not supported by substantial evidence, and we therefore reverse and remand.

Reversed and remanded.